UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MITCHELL U. BRAITHWAITE III,

    Plaintiff,

v.

SP PLUS CORPORATION, Foreign Profit Corporation,

    Defendant.

CASE NO.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

1) Plaintiff MITCHELL U. BRAITHWAITE III ("BRAITHWAITE"), by and through his undersigned counsel, hereby brings this civil rights action and personal injury claim against Defendant SP PLUS CORPORATION ("SP PLUS"), a foreign profit corporation. This action is brought for violations of federal and state disability civil rights laws, for its failure to comply with federal nondiscrimination statutes. These statutes include the Americans with Disabilities Act (ADA) of 1990, codified at 42 U.S.C. §§ 12101 *et seq.*; 42 U.S.C. §§ 12181 & 12182; 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, specifically 49 CFR § 37.165(c)(3).

2) BRAITHWAITE further alleges violations of numerous provisions within Florida's civil rights statutes and other legislative measures designed to protect against discrimination towards persons with disabilities.

3) The action also addresses a physical injury sustained by BRAITHWAITE as a direct result of these alleged violations.

4) The matters in controversy exceed the sum or value of $75,000.00, exclusive of interest and costs.

## JURISDICTION

5) This Court holds original jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1331, for federal question jurisdiction; 1332, for diversity of citizenship jurisdiction; and

1343, for civil rights. Additionally, 29 U.S.C. § 794 grants jurisdiction for claims related to nondiscrimination under federal grants and programs. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction for all related claims present in this action. And jurisdiction to issue declaratory judgments and further relief is established under 28 U.S.C. §§ 2201 and 2202.

## VENUE

6) Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.04. This is because: (i) SP PLUS conducts business actively within this district, and (ii) a significant portion of the events or omissions leading to the claims made herein took place within this district.

## PARTIES

7) Plaintiff BRAITHWAITE, a resident of the State of Florida, is recognized as an individual with a disability in accordance with definitions provided by all relevant federal and state statutes pertinent to his claims. This includes the Americans with Disabilities Act (ADA) of 1990, codified at 42 U.S.C. §§ 12101 *et seq.*, 42 U.S.C. §§ 12181 *et seq.*, 42 U.S.C. §§ 12182 *et seq,* 42 U.S.C. §§ 12184, Title 49 of the Code of Federal Regulations Part 37, 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, the Florida Civil Rights Act of 1992, as detailed in Florida Civil Code §§ 760.01-760.11 and §§ 509.092 *et seq*.

8) BRAITHWAITE, a paraplegic, possesses a "qualified disability" and relies on a wheelchair for mobility. BRAITHWAITE's mobility device qualifies as a "common wheelchair" according to the definitions set forth by the Architectural and Transportation Barriers Compliance Board (ATBCB or "Access Board"). According to the Access Board, a "common wheelchair" under ADA guidelines encompasses any mobility device that accommodates the dimensions of 30 inches by 48 inches on wheelchair lifts and does not exceed 600 pounds when occupied.

9) Defendant SP PLUS, a foreign profit corporation, licensed and actively engaged in business within the State of Florida, operates as a private entity providing specified transportation services, including bus services at Orlando International Airport. As such, SP PLUS bears the

responsibility to ensure that its bus operations adhere to the ADA and all applicable federal and state laws and regulations.

10) SP PLUS has violated federal and state disability civil rights laws among other legal mandates. Employees of SP PLUS acted as agents under its direction, with responsibilities that include compliance with federal and state legal requirements, and ensuring the safety of all passengers. Consequently, SP PLUS is accountable for ensuring adherence to all pertinent laws and is liable for any infractions committed by its employees within the scope of their employment.

## ALLEGATIONS COMMON TO ALL CLAIMS

11) This civil rights complaint is filed by a paraplegic who uses a wheelchair due to mobility disabilities and was denied non-discriminatory, safe access to bus services operated by SP PLUS. As a result of SP PLUS's actions and inactions, BRAITHWAITE sustained a serious bodily injury.

12) SP PLUS has violated federal and state disability civil rights laws by failing to comply with federal non-discrimination statutes. These include the Americans with Disabilities Act of 1990, Americans with Disabilities Act (ADA) of 1990, codified at 42 U.S.C. §§ 12101 *et seq.*, 42 U.S.C. §§ 12181 *et seq.*, 42 U.S.C. §§ 12182 *et seq,* 42 U.S.C. §§ 12184, Title 49 of the Code of Federal Regulations Part 37, 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, the Florida Civil Rights Act of 1992, as detailed in Florida Civil Code §§ 760.01-760.11 and §§ 509.092 *et seq.*, and 29 U.S.C. § 794(a), along with various provisions of Florida's civil rights statutes and other laws that protect against discrimination.

13) SP PLUS has engaged in discrimination against BRAITHWAITE and others in similar circumstances in multiple ways. This includes: (a) not ensuring that individuals with mobility disabilities who use common wheelchairs have non-discriminatory, safe access to bus services; (b) not ensuring that personnel are adequately trained in the safe operation of vehicles and equipment, as well as in providing respectful and courteous service to passengers with disabilities; and (c) maintaining architectural barriers that do not comply with legal standards.

FACTUAL ALLEGATIONS

14) BRAITHWAITE, a paraplegic, relies on a manual wheelchair for daily mobility.

15) On November 13, 2022, he used a working wheelchair lift to board shuttle bus #2196 at the Orlando International Airport, which is owned and operated by SP PLUS.

16) The driver was aware that BRAITHWAITE used a wheelchair. According to 49 CFR § 37.165(c)(3), the DOT ADA regulations, the bus must have a wheelchair securement system.

17) Here, the driver did not secure BRAITHWAITE's wheelchair upon boarding. It is unclear if the bus was equipped with the necessary securement devices, as the driver did not use any.

18) Despite knowing the wheelchair was unsecured, the driver started negligently driving and then, driving too fast down a decline, abruptly stopped.

19) This caused BRAITHWAITE's wheelchair to slide forward, hit the seat in front, and resulted in BRAITHWAITE falling from his chair, suffering serious and permanent injuries.

20) After the fall, the driver did not offer help but allowed another passenger to assist BRAITHWAITE back into his wheelchair.

21) This incident led to BRAITHWAITE sustaining serious injuries and left him in pain, embarrassed, and upset, unable to get back into his wheelchair without help.

22) The driver acted rudely and impatiently towards BRAITHWAITE, showing little concern when BRAITHWAITE fell hard from his wheelchair.

23) Despite witnessing the fall, the driver did not secure the wheelchair for the remainder of the journey and continued driving as if nothing had occurred.

24) This negligence, combined with the absence of securement devices or their use, resulted in injuries to BRAITHWAITE.

25) The fall turned out to be more serious than BRAITHWAITE, a paraplegic with varying sensations in his lower extremities, initially realized.

26)  Embarrassed by the incident and without visible bleeding, BRAITHWAITE hoped to simply "walk it off," opting not to call an ambulance despite the pain.

27)  BRAITHWAITE experienced pain in the shoulder he landed on but had mobility, leading him to believe he would recover without issue.

28)  However, that night, symptoms of Autonomic Dysreflexia (AD) and leg spasms, indicators of serious injury for paraplegics, woke him with shaking, shivers, pain, and sweats.

29)  With severe swelling in his ankle and ongoing shoulder pain, BRAITHWAITE recognized the severity of his condition and sought immediate medical attention.

30)  At the hospital, it was determined that BRAITHWAITE's shoulder suffered from a soft tissue contusion due to the fall, and his ankle was fractured.

31)  He was prescribed a walking boot for the ankle injury.

32)  In the weeks following the incident, BRAITHWAITE faced significant difficulties using his wheelchair due to intense shoulder pain.

33)  This pain hindered his mobility more severely than it would an able-bodied person, as BRAITHWAITE relies on his shoulder movement to operate his manual wheelchair.

34)  Proudly independent, BRAITHWAITE lives alone and managed his daily activities without assistance before this injury.

35)  During this challenging period, BRAITHWAITE had no support from family or friends.

36)  He had to bathe, transfer himself from his wheelchair, and manage his injured leg, including the difficult task of wearing and removing his walking boot — all on his own.

37)  The shoulder injury caused constant pain and limited his mobility significantly.

38)  Before this incident, BRAITHWAITE was a fit young man and a promising wheelchair basketball player.

39)  He played professionally, relying on the sport for income and as a source of motivation. BRAITHWAITE had attainable aspirations of competing in the Paralympics, and even tried out for the

U.S. Team.

40) Unfortunately, the injuries from the bus accident hampered his career progress, causing him to miss opportunities, including potentially lucrative sponsorships and endorsements, and negatively impacting his ranking.

41) The leg/ankle injury from Defendant's negligence made it impossible for BRAITHWAITE to be secured in his wheelchair properly, affecting his ability to play and his sports ranking.

42) Moreover, the accident led to the development of Autonomic Dysreflexia (AD), a condition marked by severe, sudden increases in blood pressure and other symptoms like spasms, headaches, excessive sweating, and body shakes.

43) AD significantly affects the physical and emotional well-being of paraplegics, signaling that something is wrong.

44) For months, BRAITHWAITE battled not only the physical pain from his leg injury but also emotional turmoil, wondering if other issues were causing his distress.

45) This uncertainty led to depression and anxiety, further impacting his professional performance.

46) Physical activity would trigger AD reactions, making it impossible for him to play.

47) As a result, BRAITHWAITE missed the chance to join the US Team and experienced a decline in rank, losing over $50,000.00 in potential income and missing out on sponsorship and endorsement opportunities.

48) BRAITHWAITE has suffered significantly both physically and emotionally due to this injury.

49) The impact on his life extends beyond the immediate pain and disruption, affecting his emotional well-being deeply.

50) Furthermore, there's a real concern that BRAITHWAITE will face discrimination again,

given the apparent ongoing failure to use or even provide securement devices on SP PLUS's buses.

51) This pattern suggests a broader issue of noncompliance with laws designed to prevent discrimination, posing a risk not just to BRAITHWAITE but potentially to others in similar situations.

52) SP PLUS failed to adhere to United States and Florida disability civil rights and access laws, discriminating against individuals with disabilities in their provision of public bus services.

53) This ongoing discrimination manifests as systemic issues, including the lack of nondiscriminatory, safe access to bus services for those using common wheelchairs, and insufficient training for personnel on the safe operation of vehicles, and respectful treatment of passengers with disabilities.

54) These issues result from SP PLUS's policies or the absence thereof, leading to a disregard for the civil rights of passengers with mobility disabilities.

55) As a result, BRAITHWAITE has experienced denial of nondiscriminatory access to bus services, interference with safe bus usage, physical injury and risk thereof, and significant inconvenience and distress.

56) These issues are continuous, exacerbated by SP PLUS's consistent failure to use securement devices on buses, signaling a broader noncompliance with nondiscrimination laws.

57) Despite BRAITHWAITE's repeated complaints to SP PLUS before this lawsuit, the discrimination persists.

58) BRAITHWAITE, who frequently travels to the Orlando airport, anticipates using SP PLUS's services again and facing similar discriminatory treatment due to the ongoing issues with securement devices and overall noncompliance with applicable laws.

59) This cycle of discrimination and injury highlights SP PLUS's ongoing legal violations and the sustained impact on BRAITHWAITE's rights and well-being.

### CLAIM I: Title III of the Americans with Disabilities Act of 1990

60) BRAITHWAITE hereby incorporates by reference the allegations set forth in Paragraphs

1 through 59 above.

61) SP PLUS, a private entity that offers specified transportation services, is primarily engaged in transporting people and impacts commerce.

62) Therefore, SP PLUS falls under the purview of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq*.; 42 U.S.C. §§ 12181 & 12182; 42 U.S.C. §§ 12184; 28 CFR Part 36; 49 CFR Part 37, the Department of Transportation's ADA regulations, specifically 49 CFR § 37.165(c)(3). Consequently, Defendant SP PLUS CORPORATION is subject to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq*., and 42 U.S.C. § 12184.

63) SP PLUS operates a private fixed-route transportation service affecting commerce as defined by 42 U.S.C. § 12184(a) and 49 C.F.R. §§ 37.3 and 37.5(f).

64) It is an operator of an over-the-road bus (OTRB) as per 42 U.S.C. § 12181(5) and 49 C.F.R. § 37.3, and qualifies as a small operator under 49 C.F.R. § 37.3.

65) In compliance with Title III of the ADA, a small OTRB fixed-route operator must either ensure that any vehicle purchased or leased after October 29, 2001, is accessible and usable by individuals with disabilities, including those who use wheelchairs, or provide equivalent service to such individuals. This is mandated by 42 U.S.C. § 12184(b)(4)(A) and 49 C.F.R. § 37.183(b).

66) An OTRB operator must not exclude persons with disabilities from participating in, or deny them the benefits of, specified public transportation services, as prohibited by Title III of the ADA, 42 U.S.C. § 12184, along with applicable implementing regulations found in 28 C.F.R. part 36, and 49 C.F.R. parts 37 and 38.

67) The conduct of SP PLUS, as previously detailed in this Complaint, constitutes a violation of Title III of the ADA and the federal regulations enacted under Title III, as found in 28 C.F.R. part 36, and 49 C.F.R. parts 27, 37, and 38.

68) Title III of the Americans with Disabilities Act (ADA) forbids private entities that are mainly involved in transporting people and affect commerce from discriminating against individuals with disabilities.

69) This discrimination pertains to denying these individuals the full and equal enjoyment of public transportation services based on their disability.

70) SP PLUS has breached Title III of the ADA by not operating its services in a nondiscriminatory manner.

71) Specific failures include not providing individuals with mobility disabilities who use standard wheelchairs nondiscriminatory and safe access to bus services, and not ensuring that their personnel are adequately trained for the safe operation of vehicles and equipment, as well as in offering respectful and courteous service to passengers with disabilities.

72) Additionally, it constitutes discrimination when an operator relies on individuals other than employees, such as family members or travel companions, to assist passengers with disabilities — unless the passenger specifically requests or consents to such assistance.

73) In this instance, the bus driver relied on another passenger, a stranger to BRAITHWAITE, to help BRAITHWAITE up from the bus floor after a fall caused by SP PLUS's negligence.

74) This act, coupled with the bus driver's behavior, clearly indicates a failure on the part of the SP PLUS to adequately train staff on accessibility requirements.

75) It is the responsibility of SP PLUS:

 a. To comply with all ADA requirements for accessible service, and not exclude persons with disabilities from their transportation services;

 b. To train all employees and contractors on the requirements of the ADA;

 c. To have all securement devices and train employees to properly use them;

      d. To properly maintain all wheelchair lifts (to the extent a company has lift-equipped buses);

      e. To file required annual reports with the Federal Motor Carrier Safety Administration;

      f. And to remove all architectural barriers leading up to the bus and on the bus.

76) BRAITHWAITE has encountered unlawful barriers that have restricted full and equal access to and enjoyment of the property in question.

77) These barriers have directly resulted in BRAITHWAITE suffering injuries due to SP PLUS's actions or failure to act as detailed herein.

78) BRAITHWAITE anticipates visiting the airport shortly, as he normally flies out of the Orlando Airport, to utilize the goods and services available to the public, including the buses.

79) However, there is a legitimate concern of facing continued discrimination due to violations of the Americans with Disabilities Act (ADA).

80) BRAITHWAITE plans to access and utilize the buses owned and operated by SP PLUS within the next six months, or possibly earlier.

81) The objective is to use these services both as a patron and as a tester, similar to the access currently provided to the able-bodied community.

82) Regrettably, BRAITHWAITE has been and expects to be denied such access because of SP PLUS's noncompliance with the ADA.

83) SP PLUS's failure to adhere to the ADA has resulted in direct harm to BRAITHWAITE. He requests that the court take appropriate action to ensure SP PLUS complies with the ADA, thereby preventing future discrimination and guaranteeing equal access for all individuals, including those with disabilities.

84) SP PLUS has discriminated against BRAITHWAITE and others in similar situations by denying them full access and equal enjoyment of the facilities.

85) This discrimination stems from SP PLUS's failure to ensure BRAITHWAITE's equivalent participation, a violation of 42 U.S.C. § 12182(b)(2)(A)(iv), and the overarching principles of the Americans with Disabilities Act as outlined in 42 U.S.C. § 12101 *et seq*.

86) Additionally, SP PLUS has failed to remove architectural barriers where such removal is readily achievable, in direct contravention of 42 U.S.C. § 12182(b)(2)(A)(iv).

87) Based on information and belief, there are ongoing violations of the ADA at the subject facility.

88) A comprehensive inspection is required to identify all infractions.

89) The enumerated violations are not exhaustive of the barriers, conditions, or breaches experienced by BRAITHWAITE or present at the facility. A thorough inspection is necessary to uncover all acts of discrimination in violation of the ADA.

90) To this day, barriers that could be readily addressed remain unremedied, continuing non-compliance with the ADA's requirements.

91) BRAITHWAITE has sought and has been, continues to be, and in the future will, be denied access to the benefits of services, programs, activities of the building and its facilities, and have otherwise been discriminated against and damaged by SP PLUS, because of SP PLUS's ADA violations set forth above, and will continue to suffer such discrimination, injury and damage without the relief provided by the ADA as requested herein. The barriers at the Subject Facility have effectively denied or diminished the Plaintiff's ability to visit the property and have endangered his safety. Barriers at the property have posed a risk of injury to the Plaintiff, including but not limited to: physical injury, discomfort, and embarrassment.

92) BRAITHWAITE has engaged the services of the undersigned counsel to file and prosecute this action. Under 42 U.S.C. § 12205 and 42 U.S.C. § 12117, BRAITHWAITE is entitled to recover reasonable attorney's fees, costs, and expenses from SP PLUS.

93) In accordance with 42 U.S.C. § 12188, this Court has the authority to grant injunctive relief to BRAITHWAITE.

94) This includes ordering the necessary alterations to the subject facilities to ensure they become readily accessible to and usable by individuals with disabilities as mandated by the Americans with Disabilities Act (ADA).

95) Such relief may extend to closing the facilities until the required modifications have been completed to comply with the ADA standards.

96) Based on the provisions of 42 U.S.C. § 12188, as well as the remedies, procedures, and rights therein, BRAITHWAITE prays for judgment as set forth below.

## CLAIM II: Negligent Causation of Personal Injury

97) BRAITHWAITE hereby incorporates by reference the allegations set forth in Paragraphs 1 through 96 above, inclusive.

98) This action arises from negligence resulting in damages exceeding $75,000.00, exclusive of prejudgment interest, costs, and attorney fees. The value of BRAITHWAITE's claim surpasses the minimum jurisdictional threshold for this Court. The true value of BRAITHWAITE's claim will be ascertained by a fair and just jury, pursuant to Article 1, Section 21 of the Florida Constitution.

99) SP PLUS had an obligation to BRAITHWAITE to provide nondiscriminatory, safe access to bus services, ensure the proficiency of its personnel in the safe operation of vehicles and equipment, and adhere to federal and state disability rights laws.

100) SP PLUS is vicariously liable for its employee driver's negligence under the Americans with Disabilities Act (ADA) and Florida's Dangerous Instrumentality Doctrine, given the driver's actions occurred within the scope of his employment.

101) SP PLUS breached this duty by failing to ensure nondiscriminatory, safe access to bus services, adequate training for its personnel on safe vehicle and equipment operation, respectful and

courteous service to passengers with disabilities, and compliance with federal and state disability rights laws.

102) The injuries sustained by BRAITHWAITE are permanent, resulting in ongoing and future losses.

103) SP PLUS did not take the necessary precautions to ensure the safety of BRAITHWAITE, failing to exercise reasonable care.

104) The corporation was aware or should have been aware that not providing nondiscriminatory, safe access to bus services, failing to train its personnel adequately for the safe operation of vehicles and equipment, and not ensuring respectful and courteous service to passengers with disabilities, along with non-compliance with federal and state disability rights laws, posed an unreasonable risk of injury to individuals with disabilities.

105) SP PLUS was or should have been aware that such negligence could lead to injuries for persons like BRAITHWAITE.

106) Moreover, SP PLUS was or should have been aware that individuals with disabilities would attempt to utilize its bus services.

107) Furthermore, the driver was negligent in his driving, to-wit: driving erratically, at an excessive speed, and stopping short.

108) As a result of violating relevant laws and the Americans with Disabilities Act (ADA), SP PLUS CORPORATION caused BRAITHWAITE to suffer injuries, including but not limited to physical harm, discomfort, and embarrassment.

109) Consequently, due to SP PLUS's negligence, as detailed above, BRAITHWAITE sustained bodily injuries that led to pain and suffering, disability, disfigurement, hospital and medical expenses, loss of enjoyment of life, mental anguish, physical impairment, economic damages, inconvenience, diminished quality of life, loss of earnings, reduced earning capacity, and exacerbation of pre-existing conditions.

110) BRAITHWAITE faces losses that are either permanent or ongoing, and it is anticipated these losses will persist into the future.

111) SP PLUS had a duty to ensure BRAITHWAITE's safety through reasonable care and breached this duty by violating federal and state laws.

112) SP PLUS's breach of duty included employing a bus driver who operated the vehicle negligently, erratically, and unsafely.

113) This driver neglected to use securement devices and did not assist BRAITHWAITE, leading to an incident where BRAITHWAITE fell, incurring injuries.

114) This incident was caused by the negligent, grossly negligent, and reckless actions of SP PLUS and its employees or agents.

115) As a result, BRAITHWAITE suffered damages, including painful injuries to his shoulder and lower extremity, necessitating medical care and treatment, along with related expenses.

116) The condition causing BRAITHWAITE's fall was a hazardous situation either created by SP PLUS or one that SP PLUS knew or should have known about.

117) Had SP PLUS exercised reasonable care, this hazard could have been remedied.

118) Due to SP PLUS's negligence, BRAITHWAITE sustained injuries to his body and extremities, exacerbating pre-existing conditions.

119) These injuries led to pain, a physical handicap, medical expenses for treatment and potential surgical procedures, mental and physical suffering, financial costs for medical care, lost wages, and diminished earning capacity.

120) Moreover, BRAITHWAITE's injuries hinder his ability to enjoy a normal life. Given their permanent or ongoing nature, BRAITHWAITE will continue to face these challenges and damages in the future.

## CLAIM III: Negligent Infliction of Emotional Distress

121) BRAITHWAITE hereby incorporates by reference the allegations set forth in Paragraphs 1 through 120, inclusive.

122) SP PLUS, through the exercise of reasonable care, should have been aware that the acts, conduct, and omissions detailed previously were in breach of BRAITHWAITE's rights under both Florida law and federal and state disability rights statutes.

123) These actions and failures were likely to cause BRAITHWAITE emotional and physical distress.

124) SP PLUS's negligence in adhering to its legal obligations has resulted in physical injuries to BRAITHWAITE, along with ongoing humiliation, anxiety, mental anguish, emotional distress, loss of self-esteem, and negative impacts on personal and social relationships.

125) Additionally, BRAITHWAITE developed Autonomic Dysreflexia as a direct consequence of the injuries sustained on the bus.

126) This affliction triggers both physical symptoms and emotional responses, complicating the identification of the exact source of distress.

127) After negligent act by SP PLUS, BRAITHWAITE was aware of a leg injury caused by the bus incident, but struggled with the possibility that his emotional turmoil might have another cause, leading to depression and anxiety.

128) This emotional impact has disrupted his usual life activities.

129) Due to these injuries, BRAITHWAITE seeks damages, the amount of which will be determined based on evidence presented at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, BRAITHWAITE respectfully requests that this Court render judgment in his favor and issue an Order against Defendant SP PLUS as follows:

- A judgment against Defendant for each count presented in this complaint.

- An order declaring that the policies and practices of Defendant are in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

- An injunction against Defendant, their employees, agents, and all persons acting on the Defendant's behalf or under their control, prohibiting any further violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*.; 49 CFR Part 37; the Florida Civil Rights Act of 1992; and the Florida Civil Code §§ 760.01-760.11 and §§ 509.092 et seq.

- An order mandating that Defendant implement policies and practices to ensure nondiscriminatory, safe access to public bus transportation services for persons with mobility disabilities who use common wheelchairs, in accordance with federal and state law.

- An order requiring Defendant to make necessary alterations to their premises and policies to ensure compliance with the ADA, making the facilities accessible and usable by individuals with disabilities.

- An award of actual, compensatory, and statutory damages for the violation of civil rights, restitution, and a tripling of these damages under 49 CFR Part 37; the Florida Civil Rights Act of 1992; and the Florida Civil Code §§ 760.01-760.11 and §§ 509.092 et seq.

- An award of actual and compensatory damages to BRAITHWAITE for the negligent causation of personal injury and the negligent infliction of emotional distress.

- An award of compensatory damages to fully compensate BRAITHWAITE for injuries incurred due to Defendant's discriminatory conduct, including monetary damages and compensatory damages (general and special damages), to be proven at trial.

- An award of special damages to BRAITHWAITE for lost earnings and/or earning capacity, and damages for mental and emotional distress, and physical injuries incurred as a result of the Defendant's discriminatory conduct.

- An award of punitive and exemplary damages against Defendant as allowed under the law.

- An award of reasonable attorney's fees, costs (including litigation expenses, court costs, and expert fees), and other expenses of the lawsuit to BRAITHWAITE.

- A retention of jurisdiction by this Court to ensure Defendant's compliance with the ADA and to protect against similar future discrimination by Defendant.

- Such other and further relief as the Court deems just and proper in this matter.

**JURY TRIAL DEMANDED**

Plaintiff BRAITHWAITE hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Tal Shemtov*
TAL SHEMTOV
Attorney for Plaintiff
Florida Bar # 28456
Shemtov & Hillstrom, PLLC
612 SE 5th Ave., Suite 6
Fort Lauderdale, FL 33301
(954) 329-2222
(954) 329-2211 FAX
tal@shlawfl.com